FILED

JUN 1 8 2007   NF

JUN 12 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NOTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LAMONT MAYBON** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 07CV3294 |
| | ) | JUDGE HIBBLER |
| **CITY OF CHICAGO, ILLINOIS,** | ) | MAGISTRATE JUDGE VALDEZ |
| **CHICAGO POLICE OFFICER** | ) | |
| **R.L. JOHNSON, and,** | ) | |
| **CHICAGO POLICE OFFICER** | ) | |
| **G.D. HABIAK, JR.** | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

Now comes Plaintiff, LAMONT MAYBON, ("Plaintiff"), by and through his attorney, Jeffrey B. Granich, and makes the following complaint against Defendant CHICAGO POLICE OFFICER R.L. JOHNSON, and Defendant CHICAGO POLICE OFFICER G.D. HABIAK, JR., ("Defendant Officers"), and Defendant CITY OF CHICAGO ("Defendant City"), and states as follows:

### JURISDICTION and VENUE

1.  This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2.  This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

3.  Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district and the events giving rise to the claims asserted in this complaint occurred within this district.

## PARTIES

4.    At all times relevant hereto, Plaintiff Lamont Maybon was an adult, African-American male resident of Chicago, Illinois.

5.    Defendant Officers were at all relevant times Chicago Police Officers employed by the City of Chicago and acting within the scope of their employment and under color of law.

6.    Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant Officers.

## FACTUAL ALLEGATIONS

7.    On or about the evening of June 15, 2006, Defendant Officers stopped Plaintiff Lamont Maybon in his vehicle at 7600 S. Honore St., Chicago, Illinois 60620.

8.    Plaintiff was fully complying with all traffic rules and regulations and there existed no factual or legal basis for the stop by Defendant Officers.

9.    Plaintiff was told by Defendant Officers to produce his driver's license and registration, to which Plaintiff complied by producing both a valid driver's license and the current registration to his vehicle.

10.   At this time, Defendant Officers told Plaintiff to exit his vehicle without an arrest warrant, without a search warrant, and without probable cause to believe that Plaintiff had committed or was committing a crime.

11.   Plaintiff made no threatening or suspicious gestures to Defendant Officers and fully complied with Defendant Officers' demands to Plaintiff to exit his vehicle.

12. After Plaintiff exited the vehicle according to Defendant Officers' demands, Defendant Officers proceeded to search Plaintiff's vehicle without a search warrant, without probable cause, and without Plaintiff's permission.

13. Defendant Officers then hand-cuffed Plaintiff and transported him to the 6th District Chicago Police Station where he was unconstitutionally charged with the possession of cannabis, possession of cocaine, transporting liquor, and failure to have two headlights (Case No. 06-123593).

14. At or near the same time, Defendant Officers impounded Plaintiff's vehicle.

15. Plaintiff was held in custody on this matter until June 19, 2006 when he was released on bond.

16. On August 3, 2006, Case No. 06-123593 was dismissed against Plaintiff.

### Count I – 42 U.S.C. § 1983 False Arrest

17. Plaintiff re-alleges paragraphs 1 through 16 as if fully repleaded herein.

18. On June 15, 2006, Plaintiff was seized and arrested without a warrant and without probable cause. This seizure and arrest were in violation of the Plaintiff's rights secured under the Fourth and Fourteenth Amendments of the Constitution of the United States.

19. Defendant Officers unlawfully and maliciously arrested Plaintiff and wrongfully detained and searched him without any legal right to do so, in their official capacity as law enforcement officers, under color of state law, and acting within the scope of their employment.

20. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

3

a. As a matter of both policy and practice, the Chicago Police Department directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its officers, and its failure to do so constitutes deliberate indifference;

b. As a matter of both policy and practice, the Chicago Police Department facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Plaintiff; specifically, Chicago Police Officers accused of misconduct are aware that the Office of Professional Standards will not fully investigate these accusations and will almost always refuse to recommend discipline even where the officer has engaged in wrongdoing;

c. As a matter of widespread practice so prevalent as to comprise municipal policy, Officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which Officers fail to report misconduct committed by other Officers, such as the misconduct at issue in this case;

e. The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f. As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a Police Officer's career;

g. As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. Regardless, the number of times an Officer is accused of the same misconduct, the Officer of Professional Standards is forbidden by the City from considering those allegations if they are deemed "unsustained"; and,

h. The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against Police Officers for violations of civil rights.

21.    The acts committed by Defendant Officers were done maliciously, willfully

and wantonly, intentionally, and with reasonable certainty that the acts were in

violation of the Plaintiff's constitutional rights and would cause harm to the

Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendant Officers in a fair
and just amount sufficient to compensate him for the injuries he suffered, plus, Plaintiff
seeks a substantial sum in punitive damages against the Defendants, costs and reasonable
attorney fees, and all such other relief as this Court finds just and equitable.

### Count II – 42 U.S.C. § 1983 Unlawful Search

22.    Plaintiff re-alleges paragraphs 1 through 16 as if fully repleaded herein.

23.    Defendant Officers searched Plaintiff's person with no justifiable basis for the

search, no arrest warrant, no search warrant, and no probable cause to believe

that Plaintiff was guilty of a crime, in violation of the 4th Amendment to the

United States Constitution.

24.    The misconduct described in this Count was undertaken pursuant to the policy

and practice of the Chicago Police Department in that:

    a.  As a matter of both policy and practice, the Chicago Police Department
directly encourages the type of misconduct at issue here by failing to
adequately train, supervise and control its officers, and its failure to do so
constitutes deliberate indifference;

    b.  As a matter of both policy and practice, the Chicago Police Department
facilitates the type of misconduct at issue here by failing to adequately
punish and discipline prior instances of similar misconduct, thereby
leading Chicago Police Officers to believe their actions will never be
scrutinized and, in that way, directly encourages future abuses such as
those affecting Plaintiff; specifically, Chicago Police officers accused of
misconduct are aware that the Office of Professional Standards will not
fully investigate these accusations and will almost always refuse to
recommend discipline even where the officer has engaged in wrongdoing;

5

c. As a matter of widespread practice so prevalent as to comprise municipal policy, Officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which Officers fail to report misconduct committed by other Officers, such as the misconduct at issue in this case;

e. The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f. As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a Police Officer's career;

g. As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. Regardless, the number of times an Officer is accused of the same misconduct, the Officer of Professional Standards is forbidden by the City from considering those allegations if they are deemed "unsustained"; and,

h. The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against Police Officers for violations of civil rights.

25. The aforementioned actions of the Defendant Officers proximately caused Plaintiff to be deprived of his 4th Amendment right to be free from unlawful searches to which probable cause did not exist.

WHEREFORE, Plaintiff prays for judgment against Defendants in a fair and just amount sufficient to compensate him for the injuries he suffered, plus, Plaintiff seeks a substantial sum in punitive damages against the Defendants, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

## Count III - 42 U.S.C. § 1983 Conspiracy

26.    Plaintiff re-alleges paragraph 1 through 16 as if fully repleaded herein.

27.    Defendant Officers and Defendant City of Chicago reached an
       understanding, engaged in a sequence of events or course of conduct and
       otherwise agreed and conspired together to violate the constitutional rights
       of Plaintiff.

28.    Each Defendant did reach this understanding and agreement and did
       engage in this course of conduct with the mutual purpose, objective and
       knowledge that it would deprive Plaintiff of his right of due process, as
       guaranteed by the constitution.

29.    Additionally, said conspiracy and joint action violated Plaintiff's 4th
       Amendment rights, under color of law, in contravention of 42 U.S.C.
       § 1983.

30.    The misconduct described in this Count was undertaken pursuant to the
       policy and practice of the Chicago Police Department in that:

       a.    As a matter of both policy and practice, the Chicago Police
             Department directly encourages the type of misconduct at issue here
             by failing to adequately train, supervise and control its officers, and its
             failure to do so constitutes deliberate indifference;

       b.    As a matter of both policy and practice, the Chicago Police
             Department facilitates the type of misconduct at issue here by failing
             to adequately punish and discipline prior instances of similar
             misconduct, thereby leading Chicago Police Officers to believe their
             actions will never be scrutinized and, in that way, directly encourages
             future abuses such as those affecting Plaintiff; specifically, Chicago
             Police officers accused of misconduct are aware that the Office of
             Professional Standards will not fully investigate these accusations and
             will almost always refuse to recommend discipline even where the
             officer has engaged in wrongdoing;

c. As a matter of widespread practice so prevalent as to comprise municipal policy, Officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which Officers fail to report misconduct committed by other Officers, such as the misconduct at issue in this case;

e. The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f. As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a Police Officer's career;

g. As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. Regardless, the number of times an Officer is accused of the same misconduct, the Officer of Professional Standards is forbidden by the City from considering those allegations if they are deemed "unsustained"; and,

h. The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against Police Officers for violations of civil rights.

31. This course of conduct by Defendants was done willfully, maliciously,

intentionally, or with reckless disregard and gross negligence, and directly

and proximately caused injury and harm to Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendants in a fair and just amount sufficient to compensate him for the injuries he suffered, plus, Plaintiff seeks a substantial sum in punitive damages against the Defendants, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

## Count IV – False Imprisonment

32.     Plaintiff re-alleges paragraphs 1 through 16 as if fully repleaded herein.

33.     Jurisdiction of this court is invoked pursuant to its supplemental
        jurisdiction under title 28, United States Code §1367.

34.     On June 15, 2006, Plaintiff was seized and detained without a warrant and
        without probable cause. This detention and seizure was in violation of the
        Plaintiff's rights secured under the Fourth and Fourteenth Amendments of
        the Constitution of the United States.

35.     Defendant Officers and Defendant City unlawfully seized, detained, and
        wrongfully searched Plaintiff without any legal right to do so.

36.     The acts committed by Defendant Officers and Defendant City were done
        maliciously, willfully and wantonly, intentionally, and with reasonable
        certainty that the acts were in violation of the Plaintiff's constitutional
        rights and would cause harm to the Plaintiff.

        WHEREFORE, Plaintiff prays for judgment against Defendant Officers and the
City of Chicago in a fair and just amount sufficient to compensate him for the injuries he
suffered, plus costs and reasonable attorney fees, and all such other relief as this Court
finds just and equitable.

## Count V – Conversion

57.     Plaintiff re-alleges paragraphs 1 through 18 as if fully repleaded herein.

58.     Jurisdiction of this court is invoked pursuant to its supplemental
        jurisdiction under title 28, United States Code §1367.

53.     On June 15, 2006, Plaintiff Lamont Maybon was the rightful and legal
        owner of a 1989 Chevrolet S10 truck.

54.     On this date, Plaintiff Lamont Maybon had an absolute and unconditional
        right to the immediate possession of said property.

9

55.     The Unknown Defendant Officers as well as Defendant City of Chicago wrongfully and without authorization assumed control and dominion over these items.

56.     At the time of this conversion, Plaintiff Lamont Maybon made a demand for the possession of these items.

WHEREFORE, Plaintiff Lamont Maybon prays for judgment against the Defendant Unknown Officers and the City of Chicago in a fair and just amount sufficient to compensate him for the conversion of his property by the Defendants actions, plus, Plaintiff seeks costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

## Count VI – Intentional Infliction of Emotional Distress

37.     Plaintiff re-alleges paragraphs 1 through 16 as if fully repleaded herein.

38.     Jurisdiction of this court is invoked pursuant to its supplemental jurisdiction under title 28, United States Code §1367.

39.     Defendant Officers' unlawful seizure and arrest of Plaintiff was committed with intentional disregard for Plaintiff's innocence, and amount to extreme and outrageous conduct against Plaintiff.

40.     Defendant Officers intended to inflict severe emotional distress upon the Plaintiff and knew that there was a high probability that their conduct would cause him severe emotional distress and mental anguish.

41.     Defendant Officers intended to inflict severe emotional distress upon Plaintiff and knew that there was a high probability that their conduct would cause him severe emotional distress and mental anguish.

42.     As a direct and proximate result of this illegal and malicious conduct, Plaintiff suffered extensive damages, including but not limited to, emotional harm, legal, and other out-of-pocket costs and other damages which will be proven at trial.

10

WHEREFORE, Plaintiff prays for judgment against Defendants in a fair and just amount sufficient to compensate him for the injuries he suffered, plus, Plaintiff seeks costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

### Count VII –State Law Claims Against Defendant City
### *Respondeat Superior* and Indemnification

43.     Plaintiff re-alleges paragraphs 1 through 16 as if fully re-pleaded herein.

44.     Illinois law provides that public entities, such as Defendant City, are

directed to pay any compensatory damages on a tort judgment against an

employee who was acting within the scope of his or her employment.

45.     At all relevant times, Defendant Officers were agents of Defendant City

and employees of the Chicago Police Department acting within the scope

of their employment.  Defendant City, therefore, is liable as principal for

all torts committed by its agents, Defendant Officers.

WHEREFORE, Plaintiff prays for judgment against Defendants in a fair and just amount sufficient to compensate him for the injuries he suffered, plus, Plaintiff seeks costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

LAMONT MAYBON,
Plaintiff,

By:

Jeffrey B. Granich
Attorney for Plaintiff

JEFFREY B. GRANICH
Law Offices of Jeffrey B. Granich
53 W. Jackson Blvd.
Suite 840
Chicago, IL 60604
(312) 939-9009
A.R.D.C. No. 6207030